1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TORI BELLE COSMETICS, LLC,

              Plaintiff,

      v.

NATALIE MEEK, *et al*.,

              Defendants.

CASE NO. 2:21-cv-00066-RSL

ORDER GRANTING IN PART NATALIE MEEK'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendant Natalie Meek's Motion for Summary Judgment and Reasonable Fees and Costs." Dkt. # 89. Plaintiff sells cosmetics and false eyelashes through a network of salespeople it calls "Affiliates." The Affiliates recruit additional Affiliates, earning a portion of the proceeds from a recruit's sales and forming a branching sales team. Plaintiff alleges that Natalie Meek, a former Affiliate, recruited other Affiliates and used the social media and communication channels she developed while she was a Tori Belle Affiliate for the benefit of a competing venture, defendants Juvenae LLC and Juvenae Holdings LLC. Plaintiff asserts claims of breach of contract, civil conspiracy, tortious interference, violations of the Defend Trade Secrets Act,

and conversion.[1] Ms. Meek seeks dismissal of all of plaintiff's remaining claims and judgment in her favor on her wage claim under RCW 49.48.030.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a

---

[1] The Court dismissed plaintiff's noncompetition and nondisparagement claims in March 2022.

ORDER GRANTING IN PART NATALIE MEEK'S
MOTION FOR SUMMARY JUDGMENT - 2

motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[2] and taking the evidence in the light most favorable to the non-moving party, the Court finds as follows:

## BACKGROUND

In August 2020, plaintiff noticed an announcement on Team Lash Out, a private Facebook group that Tori Belle Affiliates, including Ms. Meek, used to communicate with other Affiliates.[3] The post announced a meeting with Scott Seedall & Juvenae on August 24, 2020, and provided a Zoom meeting link. It referenced Ms. Meek's phone number and personal Zoom address. Dkt. # 124 at ¶ 9. Ms. Meek separately invited two Affiliates, Kristy Mummert and Kristen Gillespie, to participate in the Zoom meeting. Dkt. # 126 at ¶¶ 3 and 6. Tori Belle conducted an investigation and concluded that Ms. Meek had violated the Affiliate Agreement she had signed when she joined Tori Belle. Dkt. # 124 at ¶¶ 10-11. Ms. Meek's Affiliate status was terminated on September 7, 2020.

---

[2] Although plaintiff filed a notice of intent to file a sur-reply, no memorandum was filed.

[3] Ms. Meek was contractually required to develop a private Facebook group – in this case, Team Lash Out – for the purposes of connecting with, communicating with, and training Tori Belle Affiliates. Dkt. # 124 at ¶¶ 54-55.

The next day, Ms. Meek posted a message on her personal social media page acknowledging that she was no longer with Tori Belle, thanking her downline team, telling them to keep an eye out for information on her new home, and assuring them that "[t]his isn't goodbye, it is see you later." Dkt. # 124 at ¶ 13. Another post, dated September 11, 2020, notified her social media followers that she was joining Juvenae, they were in the soft launch phase of product development, and that if her followers had "been waiting to join me," they should check out the Juvenae website. Dkt. # 124 at ¶ 29. Defendant Jennifer Russo, a member of Ms. Meek's downline team, left Tori Belle that day. Dkt. # 124 at ¶¶ 28 and 39. On September 12, 2020, Ms. Meek posted an explanation about why she left Tori Belle on her personal page ("I want to be someplace I have a voice for my team and where I am valued") and noted that "[t]he culture we built within our team was amazing and we will have that again friends." Dkt. # 124 at ¶ 17. Another Tori Belle Affiliate who was part of Ms. Meek's downline team, defendant Anna Hone, left Tori Belle on or around September 16th, ultimately joining Juvenae. Dkt. # 124 at ¶ 28. With the departure of Ms. Meek, her downline was transferred to defendant Kenzi Jones. *Id.* Ms. Jones worked for Tori Belle for another month or two, then terminated the relationship. *Id.*

Ms. Meek's October and November posts introduced Juvenae's new line of lash products and invited her followers to place an order and join Juvenae's sales force. Dkt. # 124 at ¶ 31. She made similar posts on both her personal social media site and on Team

Lash Out. Dkt. # 124 at ¶¶ 31 and 56.[4] By the first week of December 2020, Ms. Meek, Ms. Russo, and Ms. Jones were working with Juvenae. Dkt. # 124 at ¶¶ 18-19 and 43. A few days later Ms. Meek again invited her personal page Facebook audience to become Ambassadors for Juvenae. Dkt. # 124 at ¶¶ 18 and 45. Almost 1,500 of Ms. Meek's 2,000 downline Affiliates quit Tori Belle in the fourth quarter of 2020, and twenty-four of them joined Ms. Meek to form a new downline for Juvenae. Dkt. # 124 at ¶ 19 and 33; Dkt. # 125 at 10. In January 2021, a Tori Belle Affiliate who had been following the social media posts of Ms. Meek and Ms. Russo left to join them at Juvenae. Dkt. # 124 at ¶ 32.

Tori Belle maintains an internet-based communications site, called "Backstage," in which it stores training materials, reports, team information, contact information for Affiliates and customers, company updates, product information, sales data, and pay histories. Dkt. # 124 at ¶ 24. Two members of Ms. Meek's downline team, defendants Ms. Russo and Johnette Rutledge, as well as Ms. Jones, accessed Backstage on September 8, 2020, the day after Ms. Meek's relationship with Tori Belle terminated. Dkt. # 124 at ¶ 25. On the day Ms. Russo left Tori Belle, she, Ms. Jones, Ms. Hone, and Ms. Rutledge all accessed Backstage. Dkt. # 124 at ¶ 40.

At the time Tori Belle terminated its relationship with Ms. Meek, Backstage showed that she was projected to earn $4,987.63 in commissions for the month of August 2020, to

---

[4] Tori Belle's CEO, counterclaim defendant Laura Hunter, asserts that Ms. Meek used Team Lash Out to distribute training materials patterned on Tori Belle's trade secret training program. Dkt. # 124 at ¶ 57. There is no indication that Ms. Hunter has personal knowledge of these facts, and no admissible evidence is offered in support of this assertion.

ORDER GRANTING IN PART NATALIE MEEK'S
MOTION FOR SUMMARY JUDGMENT - 5

be paid on September 10th. Dkt. # 91-2; Dkt. # 124. This amount was never paid. Ms.

Hunter asserts that the amounts were actually bonuses based on a percentage of downline

revenue, not commissions on products Ms. Meek personal sold, and that they were

forfeited under section 2.13 of the Affiliate Agreement because Ms. Meek had not been in

compliance with her contractual obligations for the entire month of August. Dkt. # 124 at

¶¶ 58 and 60. Tori Belle has admitted that it had never previously withheld monies owed to

an affiliate because of alleged non-compliance with policies and procedures. Dkt. # 90-2 at

2.[5] When Ms. Hunter conditioned payment of the commissions/bonuses on the acceptance

of new contractual terms, Ms. Meek refused. Dkt. # 91 at ¶ 9.

**DISCUSSION**

**A.    Motions to Strike**

    **1.  Plaintiff/Counterclaim Defendants' Objections**

Tori Belle and Ms. Hunter object to Ms. Meek's citation to her previously-filed

memoranda as evidence in support of the certain assertions. While the practice is certainly

not preferred, where the citations are specific and they, in turn, identify the underlying

---

[5] Tori Belle failed to timely respond to requests for admission served in June 2022. "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection . . . ." Fed. R. Civ. P. 36(a)(3). Ms. Hunter blames her attorney for failing to forward her responses in a timely manner and states that she provided answers to defense counsel in October 2022. Dkt. # 124 at ¶ 62. The answers were not attached to Ms. Hunter's declaration (contrary to her statement therein), and it is impossible to determine what is or is not contested. Regardless, Rule 36 is self-executing: "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Fed. R. Civ. P. 36(b). Tori Belle has not moved to withdraw or amend. The requests for admission are deemed admitted and the matters are conclusively established for purposes of this litigation.

evidence, that evidence has been considered. The "incorporation by reference" objection is overruled.

Assertions of fact for which no evidence is cited have not been considered. *See, e.g.*, Dkt. # 89 at 4, l.10 - 5, l.13 and 9, ll.2-4 and 16. While the LaBaw post, Dkt. # 91-4, certainly reads like a forced confession and Ms. LaBaw settled a lawsuit with Tori Belle and Ms. Hunter in April 2021, there is no declaration from Ms. LaBaw, no reason to believe that Ms. Meek has personal knowledge of the terms of the settlement agreement, and no date on the post which might support an inference based on timing.

The authentication objection to the video recording, Exhibit C to Ms. Meek's declaration (Dkt. # 91 at ¶ 10; Dkt. # 91-3), is overruled. Federal Rule of Evidence 901(a) requires that the proponent of the evidence "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Both Ms. Meek and Ms. Hunter have stated that Ms. Meek participated in Tori Belle team calls of the sort depicted in the video, Ms. Meek is familiar with both the format of the team calls and Ms. Hunter's person and voice, Ms. Meek states that this call occurred during the period immediately following defendants' departures from Tori Belle, and Ms. Hunter's screen image is identified with her name. Similar background evidence has been deemed sufficient to authenticate surveillance video even if the person testifying was not present at the time the video was recorded. *See U.S. v. Wells*, 827 F. App'x 664, 667 (9th Cir. 2020). Counsel argues that Ms. Hunter must be given the opportunity to explain what she meant during the video, suggesting that she may have been trying to soothe worried Affiliates and was not being

truthful. Ms. Hunter's declaration is silent on the issue, however, and counsel's argument is not evidence.

The parties' arguments regarding the meaning and enforceability of various contract provisions and the motivations of the parties are just that: argument. In the absence of supporting evidence and/or a judicial determination, they have not been considered as facts.

Ms. Meek's quotation of messages Ms. Hunter posted in January 2021 (Dkt. # 89 at 8) as support for the assertion that Ms. Hunter was furious when she learned that Ms. Meek was in discussions with another company is highly misleading. Those messages were not about Ms. Meek and occurred months after Ms. Meek's relationship with Tori Belle ended. Dkt. # 90-1 at ¶¶ 32-34. They are irrelevant to the issue for which they are cited and have not been considered.

## 2. Ms. Meek's Objections

Ms. Meek requests that the opposition be stricken in its entirety because it was untimely under the briefing schedule established by the Court. Dkt. # 122 at 3. The Court had established a special briefing schedule to avoid the New Year's holiday, requiring Tori Belle and Ms. Hunter to respond on the prior Friday rather than delaying the response until Tuesday, January 3rd, which would have curtailed Ms. Meek's reply period. As it was, the opposition was filed on the holiday: Ms. Meek therefore had the normal period of time in which to reply. While the lack of attention to the Court's order is regrettable, Ms. Meek

was not prejudiced, and the Court greatly prefers to resolve disputes on the merits rather than by default. The timeliness objection is overruled.

Ms. Meek seeks to exclude consideration of evidence that was not disclosed during discovery, in particular a "Word document" with a Zoom link, communications with Ms. Mummert, and plaintiff's damages calculations. In June 2022, Ms. Meek served discovery on Tori Belle. No responses or objections were provided. Ms. Meek does not identify any particular discovery request to which the Word document or the communications with Ms. Mummert would have been responsive, however, and the Court declines to comb through twelve pages of interrogatories and requests for production to determine whether these items should have been disclosed.

Damage calculations, however, were due at the very beginning of the case and are subject to an on-going duty to supplement.

> Rule 26(a)(1)(A) requires a plaintiff to make certain initial disclosures to the defendant "without awaiting a discovery request." Pursuant to subsection 26(a)(1)(A)(ii), the plaintiff must provide "a copy—or a description by category and location—of all documents ... that the [plaintiff] has in its possession, custody, or control and may use to support its claims." Pursuant to subsection 26(a)(1)(A)(iii), the plaintiff must provide "a computation of each category of damages claimed" and must "make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." The advisory committee note to Rule 26 describes this last requirement as "the functional equivalent of a standing Request for Production under Rule 34." Fed. R. Civ. P. 26 advisory committee's note to 1993 Amendments (explaining that, "[a] party claiming damages or other monetary relief must ... make available the supporting documents for

1   inspection and copying as if a request for such materials had been made
2   under Rule 34").

3   Rules 26(a)(1)(C) and 26(e)(1) set forth guidelines regarding the timing of
4   initial disclosures. Pursuant to Rule 26(a)(1)(C), the disclosing party must
5   make its initial disclosures within fourteen days of the parties' Rule 26(f)
6   conference or at a time set by stipulation or court order. Pursuant to Rule
7   26(e)(1), the disclosing party must "supplement or correct its disclosure or
8   response ... in a timely manner if the party learns that in some material
9   respect the disclosure or response is incomplete or incorrect, and if the
10  additional or corrective information has not otherwise been made known to
11  the other parties during the discovery process or in writing." Fed. R. Civ. P.
12  26(e)(1). "A major purpose" of the initial disclosure requirements "is to
13  accelerate the exchange of basic information about the case and to eliminate
14  the paper work involved in requesting such information." Fed. R. Civ. P. 26
15  advisory committee's note to 1993 Amendments.

16  Rule 37(c)(1) "forbid[s] the use at trial of any information required to be
17  disclosed by Rule 26(a) that is not properly disclosed." *Hoffman* [*v. Constr.*
18  *Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008)] (quoting *Yeti by*
19  *Molly Ltd.* [*v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001))].

*R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1245–46 (9th Cir. 2012).

While Rule 37(c)(1) authorizes district courts to impose a lesser sanction than exclusion, it

may do so "on motion and after giving an opportunity to be heard." Fed. R. Civ. P.

37(c)(1). "Accordingly, a noncompliant party must 'avail himself of the opportunity to

seek a lesser sanction' by formally requesting one from the district court. *Vanderberg v.*

*Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2018). Where a party does

not move for a lesser sanction, . . . 'the party is not allowed to use that information or

witness to supply evidence on a motion, at a hearing, or at a trial.' Fed. R. Civ. P. 37(c)(1)." *Merch. v. Corizon Health, Inc*., 993 F.3d 733, 741 (9th Cir. 2021).

Tori Belle's initial disclosures simply identify categories of compensatory damages it intended to seek. Dkt. # 128 at ¶ 3. No documents were provided or described, and no calculations were made. Plaintiff has not sought a lesser sanction under Rule 37(c)(1). The per-Affiliate sales data that Tori Belle relies upon to calculate the damages arising from Ms. Meek's conduct (Dkt. # 124 at 110-145) and Ms. Hunter's summary of that data (Dkt. # 124 at ¶ 34) are therefore inadmissible.[6]

## B. Breach of Contract

Ms. Meek seeks dismissal of "[t]he breach of contract claim arising out of alleged non-solicitation . . . ." Dkt. # 89 at 12.[7] Ms. Meek argues that she is permitted, under Washington law, to announce her new affiliation with Juvenae, and the fact that others within the Tori Belle organization followed her or decided, on their own, that Juvenae was a better fit for them cannot give rise to a breach of the non-solicitation agreement without transforming it into an unenforceable noncompete. Even if one assumes that the Uniform

---

[6] Even if a request for a lesser sanction had been made, the evidence at issue merely identifies Affiliates who left Tori Belle between September 2020 and January 2021 and "the volume of those person[s] . . . per year." Dkt. # 124 at ¶¶ 33-34. Tori Belle offers no evidence tying these departures to Ms. Meek, much less to Ms. Meek's potentially unlawful conduct. Nor is there any evidence explaining what "the volume of those person[s]" means in the context of this case. The amounts set forth in Dkt. # 124 at 110-145 could be the gross revenues attributed to each Affiliate, the gross revenues attributed to an Affiliate and her downline, or a statement of net revenue to Tori Belle. Absent more, the jury would have to speculate regarding the amount of damages at issue even if this information were admissible.

[7] Ms. Meek did not address or otherwise request judgment on the breach of contract claim arising out of the alleged breach of the confidentiality provision of the Affiliate Agreement. Nevertheless, plaintiff discussed the evidence related to the confidentiality claim in its opposition, arguing that there is a triable issue of fact. Because the issue was briefed by both parties, the Court has considered the viability of the breach of confidentiality claim.

ORDER GRANTING IN PART NATALIE MEEK'S
MOTION FOR SUMMARY JUDGMENT - 11

Trade Secrets Act on which Ms. Meek relies is an accurate statement of Washington law, Ms. Meek did more than simply announce her new affiliation.

Section 5.4 of the Affiliate agreement precludes an Affiliate from recruiting any Tori Belle Affiliate or customer to participate in another direct sales or network marketing opportunity. Dkt. # 124 at 60. The prohibition applies during the term of the agreement and for six months after its termination. *Id*. Recruit is defined, inter alia, as the "actual or attempted solicitation, enrollment, encouragement, or effort to influence in any other way, either directly, indirectly, or through a third party" other Affiliates or customers to participate in another direct sales network marketing venture. Dkt. # 124 at 61. There is evidence in the record that Ms. Meek posted on Team Lash Out an open invitation to attend a Zoom meeting with Juvenae to discuss opportunities at the new company and that she individually invited certain Tori Belle Affiliates to attend the meeting. There is also evidence that Ms. Meek subsequently used Team Lash Out to advertise Juvenae's lash products. A reasonable jury could find that this conduct falls within the definition of "recruit." [8]

With regards to the alleged breach of the confidentiality provision, Section 11 of the Affiliate Agreement contains an acknowledgement that "information and materials provided to" a Tori Belle Affiliate, such as customer lists, affiliate upline and downline

---

[8] To the extent plaintiff's claim relies on post-departure efforts to sell Juvenae products and to attract Juvenae Ambassadors using Ms. Meek's personal social media accounts, the claim fails. Although there were undoubtedly Tori Belle customers and Affiliates watching those accounts, interpreting the use of personal friends and follower lists as "solicitation" in the circumstances presented here would effectively bar Affiliates from working at any other direct sales or multi-level marketing company, in violation of RCW 49.62.030(1).

information, and training materials stored in the Backstage area of Tori Belle's website, are confidential and proprietary. Dkt. # 124 at 68-69. Ms. Meek was contractually barred from disclosing the information to third parties, using it to compete with Tori Belle, or using it to convince Affiliates or customers to alter their business relationships with Tori Belle. Dkt. # 124 at 69. In support of the claim that Ms. Meek breached these confidentiality obligations, plaintiff cites only the Court's order denying defendants' motion to dismiss. But that order was based on the allegations of the complaint: it is now time for plaintiff to produce evidence that Ms. Meek improperly used confidential information.

Although not relied on in the opposition memorandum, Ms. Hunter asserts in her declaration that:

▪ "[i]t is apparent that [Ms. Meek] used the Tori Belle Training Program while working for Juvenae" because she continued to use Tori Belle marketing strategies (Dkt. # 124 at ¶ 37);

▪ Ms. Meek "must have used Tori Belle's customer lists without permission for the benefit of Juvenae" because solicitation of a Tori Belle Affiliate has as its goal the conversion of Tori Belle customers to Juvenae customers (Dkt. # 124 at ¶ 38);

▪ defendants "were all working together to collect confidential data and/or trade secrets" because Ms. Russo, Ms. Jones, Ms. Hone, and Ms. Rutledge accessed Backstage shortly after Ms. Meek's departure (Dkt. # 124 at ¶ 40);

▪ defendants, "along with other[s] in Juvenae Management, discussed, formulated, and agreed to implement a plan to grow Juvenae's network of 'Ambassadors,' by, among other things, copying Tori Belle's lash-selling program and essentially using Tori Belle's own infrastructure to do so by soliciting then-current Tori Belle Affiliates . . ." (Dkt. # 124 at ¶ 42).

1
2    These assertions are, with one exception, insufficient to raise a triable issue of fact

3    regarding the breach of confidentiality claim. Tori Belle makes no effort to establish that

4    marketing strategies aimed at and visible to the public, such as promotional giveaways and

5    on-line parties, were in any way kept in confidence. The other three assertions of

6    wrongdoing are generally conclusory and unsupported. There is no evidence, for example,

7    that Ms. Meek accessed the customer lists or any other confidential information stored in

8    Backstage or that she copied confidential aspects of "Tori Belle's lash-selling program."

9    Because the friends, followers, and posts on Ms. Meek's personal social media accounts

10   were not kept in confidence, her post-termination use of those accounts did not involve the

11   use of Tori Belle's confidential information or otherwise breach the confidentiality

12   provision. *See* Dkt. # 62 at 12 n.2. The one aspect of Ms. Meek's conduct which may have

13   run afoul of the confidentiality provision is her use of Tori Belle's infrastructure, namely

14   Team Lash Out, to grow Juvenae's network of Ambassadors and business. To that extent,

15   Ms. Meek appears to have violated the Affiliate Agreement by using affiliate upline and

16   downline information to compete with Tori Belle and/or to convince Tori Belle Affiliates

17   to alter their business relationships with the company.

18           Although Ms. Meek's use of the Team Lash Out forum satisfies many of the

19   elements of plaintiff's breach of contract claims, plaintiff has no admissible evidence of

20   damages arising from the breaches. In light of the exclusion of evidence regarding the per-

21   Affiliate sales data that Tori Belle relies upon to calculate the losses caused by Ms. Meek's

22
23
24
25
26

conduct and Ms. Hunter's summary of that data, Tori Belle is unable to establish the damages element of its breach of contract claim. Ms. Meek is therefore entitled to judgment as a matter of law on this claim.

**C. Civil Conspiracy**

In order to succeed on a civil conspiracy claim, the evidence of the alleged conspiracy, including evidence of an agreement to grow Juvenae's business through unlawful means (such as through a breach of the Affiliate Agreement), must be clear, cogent, and convincing. *Woody v. Stapp*, 146 Wn. App. 16, 22 (2008). Ms. Meek points out that "mere suspicion or commonality of interests is insufficient to prove a conspiracy" under Washington law. *All Star Gas, Inc. v. Bechard*, 100 Wn. App. 732, 740 (2000). Assuming, for purposes of this claim, that Ms. Meek used unlawful means when she used Team Lash Out to invite Tori Belle Affiliates to a meet and greet with Juvenae and/or to advertise Juvenae products, there is no evidence that defendants Hone, Rutledge, Jones, or Russo were in any way involved in, agreed to, or conspired to bring about that conduct. That Ms. Meek and these defendants ultimately shared an interest in developing Juvenae's business cannot, standing alone, establish an agreement to do so through unlawful means.

The evidence does, however, raise a triable issue as to an agreement between Ms. Meek and the Juvenae defendants. Nevertheless, there is no admissible evidence of damages arising from the alleged concerted action. The civil conspiracy claim therefore fails as a matter of law.

1

2

**D. Tortious Interference**

3       In order to establish a tortious interference claim, plaintiff must show "(1) the

4   existence of a valid contractual relationship or business expectancy; (2) that defendants

5   had knowledge of that relationship; (3) an intentional interference inducing or causing a

6   breach or termination of the relationship or expectancy; (4) that defendants interfered for

7   an improper purpose or used improper means; and (5) resultant damage." *Leingang v.*

8   *Pierce Cty. Med. Bureau, Inc*., 131 Wn.2d 133, 157 (1997). In light of the evidence

9   regarding improper solicitation of Tori Belle Affiliates (discussed above), Ms. Meek's

10  argument that she did not use improper means to interfere with Tori Belle's relationship

11  with its independent contractors cannot support judgment as a matter of law in her favor.

12  Again, however, there is no admissible evidence of damages arising from the interference.

13  This claim fails as a matter of law.

14

15

16  **E. Defend Trade Secrets Act**

17      The Defend Trade Secrets Act confers a private cause of action on "an owner of a

18  trade secret that is misappropriated . . . if the trade secret is related to a product or service

19  used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

20  "Misappropriation" is defined to include "disclosure or use of a trade secret of another

21  without express or implied consent by a person who . . . at the time of disclosure or use,

22  knew or had reason to know that the knowledge of the trade secret was . . . derived from or

23  through a person who owed a duty to the person seeking relief to maintain the secrecy of

24  the trade secret or limit the use of the trade secret . . . ." 18 U.S.C. § 1839(5). This claim

25

26

ORDER GRANTING IN PART NATALIE MEEK'S
MOTION FOR SUMMARY JUDGMENT - 16

mirrors the breach of confidentiality provision claim discussed above, and the Court reaches the same conclusion. While Ms. Meek's use of the Team Lash Out forum likely ran afoul of the trade secret and misappropriation elements of a Defend Trade Secrets Act claim, *see Int'l Med. Devices, Inc. v. Cornell*, 2022 WL 17082090, at *3 (C.D. Cal. Sept. 26, 2022), plaintiff has no admissible evidence of damages arising from Ms. Meek's actions.

**F. Conversion**[9]

A cause of action for conversion "is founded upon the unwarranted interference with [plaintiff's] right to the possession of [plaintiff's] property." *Judkins v. Sadler-MacNeil*, 61 Wn.2d 1, 3 (1962). Plaintiff's claim is based on an asserted property interest in Team Lash Out, the private social media group Ms. Meek used to communicate with and train other Tori Belle Affiliates. Ms. Meek was required to establish such a venue under the terms of the Affiliate Agreement. There is evidence that, upon her departure from Tori Belle, Ms. Meek revoked the administrator status of Affiliates who remained loyal to Tori Belle, effectively hijacking the forum and preventing Tori Belle from using it. The conversion claim is not based on Ms. Meek's retention of her personal Facebook profile and friends/followers, but rather on her retention of the administrative keys to a private Facebook group she (and others) had developed on Tori Belle's behalf.

---

[9] Ms. Meek did not address or otherwise request judgment on the conversion claim in her moving papers. Nevertheless, plaintiff discussed the evidence related to the claim in its opposition. Because the issue was addressed by both parties, the Court has considered the viability of the conversion claim.

The Court assumes, for purposes of this motion, that Tori Belle had a protectable property interest in Team Lash Out and that Ms. Meek interfered with that interest without lawful justification. Nevertheless, this claim also fails for lack of evidence regarding damages. Conversion of chattel is generally remedied by the return of the property or payment of the fair market value of the property. *See Potter v. Wash. State Patrol*, 165 Wn.2d 67, 79 (2008). The Amended Complaint does not seek the return of the property (*see* Dkt. # 24 at ¶ 243), and plaintiff offers no evidence – admissible or inadmissible – tending to show the fair market value of Team Lash Out. The conversion claim therefore fails as a matter of law.

**G. Willful Wage Theft**

Ms. Meek has asserted a counterclaim for wages owed under her contract with Tori Belle and seeks an award of attorney's fees under RCW 49.48.030. For the reasons stated in the "Order Granting in Part Motion to Dismiss Counterclaims," Dkt. # 141, the Court finds that the Washington Supreme Court would conclude that RCW 49.48.030 is triggered by a judgment for wages or salary in favor of an employee, not an independent contractor. Ms. Meek has not shown that she is an employee and is therefore not entitled to summary judgment on this claim.[10]

//

---

[10] The Court need not determine whether the commissions owed Ms. Meek constitute wages or salary at this point.

ORDER GRANTING IN PART NATALIE MEEK'S
MOTION FOR SUMMARY JUDGMENT - 18

For all of the foregoing reasons, Tori Belle's claims against Ms. Meek are hereby DISMISSED with prejudice. Ms. Meek is not, however, entitled to summary judgment on her claim for wages owed under her contract and attorney's fees under RCW 49.48.030.

Dated this 21st day of April, 2023.

Robert S. Lasnik
United States District Judge